

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 31, 2016**

**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| DONALD WAYNE DENNETT and | § | Case No.: 12-10066-RLJ-13 |
| RACHELLE JO DENNETT, | § | |
| | § | |
| | § | |
| Debtors. | § | |

**MEMORANDUM OPINION**

The chapter 13 debtors here, Donald and Rachelle Dennett, have filed a modification to their previously confirmed chapter 13 plan, proposing to "surrender" their home in satisfaction of the claim of the mortgage holder, Nationstar Mortgage, LLC. No objection has been filed to the modification. The Dennetts defaulted under their chapter 13 plan by failing to make their regular, ongoing mortgage payments to Nationstar. The modification, if approved, would arguably "fix" their default and allow them to receive a discharge under § 1328 of the Bankruptcy Code.

The Court, sua sponte, addresses the propriety of the Dennetts' proposal and, in so doing, concludes that though their proposed surrender in full satisfaction is allowable, further hearing is necessary to address the Dennetts' certification that they had made all *direct* payments under their plan.

The Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (J), (L), and (O).

I.

A.

The Dennetts filed this chapter 13 case on February 29, 2012. Their chapter 13 plan was confirmed on May 7, 2012. The plan provided that the Dennetts would pay $1,420.00 per month to the chapter 13 trustee for 40 months, beginning March 30, 2012. The plan addressed the claim of Nationstar (originally filed by Bank of America, N.A. and subsequently transferred to Nationstar Mortgage, LLC), in the amount of $70,397.00, with interest accruing at 6.5%, and secured by the Dennetts' residence in Abilene, Texas. The plan recited that the value of the Dennetts' home was $81,566.00. The Dennetts were $13,080.00 in arrears from missed pre-petition mortgage payments, which the plan provided would be paid by the trustee from the Dennetts' regular monthly plan payments. Approximately $365.00 per month was paid on the arrearage claim. The Dennetts further promised to make their ongoing mortgage payments *directly* to Nationstar. This curing of pre-petition arrearages while maintaining ongoing payments is commonly called a "cure-and-maintain" plan and is specifically authorized under § 1322(b)(5) of the Bankruptcy Code.

B.

On July 15, 2015, after having made all payments to the chapter 13 trustee, the Dennetts filed their motion requesting a chapter 13 discharge, accompanied by their certification that they had satisfied the requirements for a discharge under chapter 13 of the Bankruptcy Code. This included their representation that they had made all required payments, "including direct payments." The chapter 13 trustee, on August 13, 2015, filed the *Notice of Final Cure Payment*, directed to Nationstar, stating that the arrearage amount had been paid and requesting that Nationstar file its statement indicating the status of ongoing mortgage payments. Nationstar did so on September 3, 2015, representing that the Dennetts had missed thirty-three post-petition direct payments, resulting in a post-petition arrearage of $32,481.05. This is not disputed. The Dennetts now propose the plan modification for the surrender of their home in full satisfaction of the claim held by Nationstar. And, if the modification is approved, they move for discharge under § 1328(a) of the Bankruptcy Code.

II.

The modification here is necessitated because the Court recently held that a debtor is not entitled to a chapter 13 discharge if he fails to make all direct, ongoing mortgage payments provided for under a cure-and-maintain chapter 13 plan. *See In re Kessler*, No. 09-60247, 2015 WL 4726794, at *4 (Bankr. N.D. Tex. Jun. 9, 2015), *aff'd*, No. 6:15-cv-00040-C (N.D. Tex. Nov. 19, 2015), *appeal docketed*, No. 15-11252 (5th Cir. Dec. 18, 2015). Such payments are made "under the plan" and are thus required as a condition to receiving a discharge. *Id*. Like the debtors in *Kessler*, the Dennetts, though having made all required conduit payments to the chapter 13 trustee, have failed to pay most if not all of their ongoing, direct mortgage payments as they promised to do under their original confirmed chapter 13 plan. To address this situation

in light of the Court's ruling in *Kessler*, the Dennetts filed their modification; as stated, Nationstar has not objected to the proposed modification.

Upon submission of the modification to the Court, neither the chapter 13 trustee nor debtors' counsel addressed whether the proposed modification was proper given the holding in another, more recent opinion from a sister court, *In re Ramos*, 540 B.R. 580 (Bankr. N.D. Tex. 2015). In *Ramos*, the court held that a surrender via a modification is not allowed by § 1329(a) of the Bankruptcy Code, the provision that addresses a post-confirmation plan modification. *Id.* at 584. The debtors in *Ramos* obtained confirmation of their cure-and-maintain chapter 13 plan that called for regular monthly post-petition mortgage payments directly to their mortgage holder, Ocwen. The Ramoses made all their payments required to be made through the chapter 13 trustee, but failed to make several of their regular mortgage payments directly to Ocwen. This was "discovered" at the end of their 60-month plan. The Ramoses attempted to salvage their plan by a modification that provided for a surrender of their home to Ocwen in full satisfaction of Ocwen's claim. If approved, they would have then been in a position to assert that all payments under their plan had been made and were thus entitled to their discharges. The court denied the modification, holding that the debtors could not modify their plan to provide for surrender of their home as a way to cure their post-petition default.

A.

Section 1329 of the Bankruptcy Code provides a means for debtors, trustees, and unsecured creditors to modify a confirmed chapter 13 plan to adjust for circumstances that may

arise during the plan's lifetime.[1]  Section 1329(a) lists four bases for modification.  A plan "may be modified . . . to—

>     (1)   increase or reduce the amount of payments on claims of a particular class provided for by the plan;
>     (2)   extend or reduce the time for such payments;
>     (3)   alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan; or
>     (4)   reduce amounts to be paid under the plan by the actual amount expended by the debtor to purchase health insurance ….

11 U.S.C. § 1329(a).  With the exception of the fourth basis (added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA)[2]), the bases remain substantially unchanged since § 1329's implementation by the Reform Act of 1978.  Section 1329(b) directs that upon a modification, §§ 1322(a), 1322(b), and 1323(c) of the Code each apply, as do the *requirements* of § 1325(a).  Section 1329(c) mandates that a modification "may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time."  11 U.S.C. § 1329(c).  A modified plan may not, therefore, extend more than five years from the due date of the first payment under the original confirmed plan.  8 *Collier on Bankruptcy* ¶ 1329.07 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2015).

---

[1] *Meza v. Truman (In re Meza)*, 467 F.3d 874, 877 (5th Cir. 2006) (stating that modification is "based on the premise that, during the life of the plan, circumstances may change, and parties should have the ability to modify the plan accordingly").

[2] H.R. Rep. No. 31, 109th Cong., 1st Sess 102 (2005), reprinted in *Norton Bankruptcy Code*, 2015–16 ed., at 1577.

B.

There were simply too many statutory road blocks to overcome for the modification in *Ramos*. The modification was proposed after the completion of the conduit payments to the chapter 13 trustee (§ 1329(a)) and, more important, after five years from the beginning of the plan payments (§ 1329(c)). If allowed, the modification would have eliminated Ocwen's right to pursue a deficiency claim if it ultimately chose to foreclose and a shortfall resulted, § 1322(b)(2). The modification in *Ramos* as an end-of-case fix was futile.[3] Of significance here, however, the *Ramos* court explained that, beyond the almost impossible task of fixing a plan after five years, a proposed surrender as a means to modify a plan is simply not allowed by the statute. *Ramos*, 540 B.R. at 584. This means, presumably, that a proposed surrender is not available, at least absent consent of the affected creditor, at any time during the chapter 13 plan period.

The Court agrees with the result reached by the court in *Ramos*, but, unlike *Ramos*, concludes that the surrender of a debtor's residence is not categorically prohibited by § 1329(a).

The court in *Ramos* cautioned that its holding was "very fact-specific." *Id*. at 585, 594. Because of the facts here, and, further, because the Court departs from *Ramos*'s holding that § 1329(a) creates a categorical bar to surrendering via a modification, the Court considers the merits of the Dennetts' proposed modification.

1.

The underlying facts here are significantly different from *Ramos*. The Dennetts are not at the end of a five-year plan and thus a modification is still possible. *See* § 1329(c). Their proposed surrender in satisfaction of Nationstar's debt is consistent with the stated value of (and equity in) the home at the time their chapter 13 plan was originally confirmed. (The debtors in

---

[3] "[T]he reality is that the Debtors simply waited too long to address the issue with the court." *Ramos*, 540 B.R. at 596.

Page 6

*Ramos* sought to satisfy Ocwen's debt via surrender of a home that, at the time of confirmation, was stated to have a value significantly less than the debt.) The chapter 13 trustee objected to the modification in *Ramos*; neither the trustee nor Nationstar has objected here.

2.

The Court does not read "surrender" out of § 1329(a). That surrender of collateral is specifically provided for at § 1325(a)(5)(C) and not specifically mentioned at § 1329(a) does not, in the Court's view, create a per se rule prohibiting surrender. Section 1329(a) sets forth the available options for a modification—as relevant here, to increase or reduce the payments, to extend or reduce the time of payments, or to account for any payment of a claim other than under the plan. If the making, changing, or crediting *of payments* are the only options, the courts are split on whether a surrender constitutes a payment. In addition to *Ramos*, there are at least two other opinions from courts in the Fifth Circuit that address this point. Two cases from the Southern District of Texas, *In re Davis*, 404 B.R. 183 (Bankr. S.D. Tex. 2009), and *In re Hernandez*, 282 B.R. 200 (Bankr. S.D. Tex. 2002), hold that a surrender is an acceptable form of payment for purposes of a modification under § 1329(a). In addition, *In re Barclay*, 276 B.R. 276 (Bankr. N.D. Ala. 2001), likewise allowed surrender via modification.[4] The court in *Davis*, relying on the definition of surrender in *Black's Law Dictionary*, stated that a "debtor's surrender of collateral to a creditor is unquestionably a form of 'payment'." *Davis*, 404 B.R. at 194.

Next, § 1329(b) specifically incorporates §§ 1322(a) and 1322(b) for modifications under subsection (a). *See* Keith M. Lundin & William H. Brown, *Chapter 13 Bankruptcy*, 4th Edition, § 264.1, Sec. Rev. July 14, 2004, www.Ch13online.com. It does not provide that such

---

[4] Another opinion from the Northern District, *In re Cameron*, 274 B.R. 457, 460 (Bankr. N.D. Tex. 2002), held that the chapter 13 debtor there could not surrender under a plan modification. In doing so, the court agreed with the result reached by the Sixth Circuit in *Nolan* and by the Court in *Coffman*. *See infra* discussion of *Nolan* and *Coffman* at B.3.

incorporated provisions are "subject to" subsection (a). The Code has many examples of provisions that are specifically made subject to other provisions. For example, § 1322(b) states that it is "[s]ubject to" the preceding subsection (a). Section 1322(b)(8) provides that a plan may provide for the payment of a claim from property of the estate or property of the debtor. In addition, the requirements of § 1325(a) also apply to a modification, thus incorporating § 1325(a)(5)(C), which is one of the required options for treating a secured claim in a chapter 13 case. *Lundin*, § 264.1.[5] An allowed claim of a creditor is a secured claim "to the extent of the value of such creditor's interest in the estate's interest in [the] property" that secures the claim. 11 U.S.C. § 506(a). Surrendering the property under § 1325(a)(5)(C) must, therefore, by definition satisfy the secured claim. The plainest, most practical reading of the Dennetts' proposal is that their home mortgage loan is *paid* by surrendering the home, *in full satisfaction*.

3.

The courts have wrestled with plan modifications that have provided for the surrender of a car as a means to address a problem—e.g., default, wreck (and application of insurance proceeds)—with a claim that is secured by the car. But in most of these cases, the disagreement

---

[5] *Lundin*, the leading chapter 13 treatise, states as follows:

> Both §§ 1322(b)(8) and 1325(a)(5)(C) are applicable at modification of a plan under § 1329(b)(1).
> …
> Section 1329(a)(1) permits a Chapter 13 debtor to "increase or reduce the amount of payments on claims of a particular class provided for by the plan." Section 1329(a)(2) permits modification to "extend or reduce the time" for payments on claims of a particular class provided for by the plan. Section 1329(a)(3) permits modification to alter distribution to a creditor to account for payment other than under the plan. If the original Chapter 13 plan provided for payment of the secured claim, then a modified plan that surrenders the collateral and changes the payments to the claim holder falls squarely within § 1329(a).

*Id*. ¶¶ 5–6. The leading bankruptcy treatise, *Collier on Bankruptcy*, agrees, stating that § 1329(b) "specifically makes applicable to postconfirmation *modifications* the provisions of section 1325(a), including subsection (a)(5)"; and, further, that the protections afforded a secured creditor by § 1325(a)(5) "do not prevent a debtor from *surrendering* collateral at some point in the case through a plan *modification*." 8 *Collier on Bankruptcy* ¶ 1329.04[1] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2015) (emphasis added).

Page 8

among the courts stems from the *effect* of the proposed surrender rather than the surrender itself. The surrenders are oftentimes made conditional as the modification typically mandates the effect of the surrender—full satisfaction of the secured claim or, if not, creation of a deficiency claim.[6] For example, the Sixth Circuit's opinion in *Chrysler Financial Corp. v. Nolan (In re Nolan)*, 232 F.3d 528 (6th Cir. 2000), as the first circuit-level authority that addressed a surrender via modification, is typically looked to for guidance. *See, e.g., Ramos*, 540 B.R. at 592; *Davis*, 404 B.R. at 193–94. *Nolan* concerned a chapter 13 debtor that modified her plan to surrender her car post-confirmation *and* then reclassified any deficiency resulting from the sale of the surrendered car as an unsecured claim. *Id*. at 529–30. The court held that § 1329(a) cannot be construed to allow a reclassification of the claim. *Id*. It is important to note that at the time *Nolan* was decided, an under-secured car loan (the value of the car being less than the debt it secures) was subject to bifurcation into a secured claim for the value of the car and an unsecured claim for the balance.[7]

*Nolan* outlined five reasons for rejecting the argument that a chapter 13 debtor can surrender collateral on a secured claim and reclassify a resulting deficiency as an unsecured claim. First, it found that § 1329(a) does not allow a debtor to alter, reduce, or reclassify a previously allowed secured *claim*.

---

[6] *See In re Davis*, 404 B.R. 183 (Bankr. S.D. Tex. 2009) (collecting cases on either side of the issue of whether a chapter 13 plan may be modified to reclassify a secured claim as unsecured). *Davis* notes that the preeminent legal commentators are likewise in disagreement. Both *Lundin* and *Collier on Bankruptcy* subscribe to the view that a chapter 13 plan can be modified to surrender and reclassify the resulting deficiency as an unsecured claim. *Id*. at 193–94 (quoting *In re Cameron*, 274 B.R. 457, 459–60 (Bankr. N.D. Tex. 2002)). A third treatise, *Norton Bankruptcy Law*, states that "the emerging majority trend holds that § 1329 may not be utilized by a debtor to voluntarily surrender collateral, and reclassify any deficiency after the creditor's sale of the collateral to an unsecured claim." *Id*. (quoting *Cameron*, 274 B.R. at 459–60 (citing 5 William L. Norton, Jr., *Norton Bankruptcy Law and Practice*, § 124:3, at 124–39 (2d ed. 1997))).

[7] Section 506(a) of the Code, which provides for this bifurcation, is no longer applicable to purchase money security interests securing a debt incurred within 910 days of the bankruptcy filing. 11 U.S.C. § 1325(a) (hanging paragraph). As a result, most car loans are no longer subject to "bifurcation" and "strip down." *See infra* note 8.

Second, the court found that the proposed modification there would have violated § 1325(a)(5)(B), which requires that the property to be distributed on account of a *secured claim* not be less than the amount of such claim. Significantly, such requirement specifically applies under § 1329(b) to plan modifications.

Third, the court said that a proposed post-confirmation modification and reclassification contravenes § 1327(a) of the Code, the provision that mandates that a confirmed plan is binding on the debtor and creditors. The second and third bases prevent the possible double reduction of a creditor's secured claim, which would be patently unfair.[8]

Fourth, the court found that it would be inequitable to use § 1329(a) to allow the debtor, the trustee, or an unsecured creditor to modify and reclassify a secured claim because of the collateral's depreciation but not allow an *under-secured* creditor to modify a plan to account for an *appreciation* in the collateral's value. *Id*.

As the fifth basis, *Nolan* said that the plain language of § 1329 simply does not provide that a plan may be modified to, in effect, increase or reduce a secured *claim*; section 1329 allows modifications that, in effect, alter the amount or term of *payments*.

The Sixth Circuit, in *In re Adkins*, 425 B.R. 296 (6th Cir. 2005), addressed again the issue of whether a car lender's secured claim could be reclassified to a partially unsecured claim when, *after repossession*, the lender did not recover in full its claim that was fully secured under a chapter 13 plan. The chapter 13 trustee made the argument that the debt remaining after repossession and sale of the car at auction should, contrary to *Nolan*, be reclassified as an unsecured claim. *Nolan* addressed this question from a proposed plan modification. In *Adkins* the issue arose *after* the lender obtained stay relief, repossessed, and sold the car. *Adkins* held

---

[8] This refers to the chapter 13 debtor's ability, if allowed, to "strip-down" the secured car loan—writing the secured car loan down to the value of the car—twice during a chapter 13 bankruptcy, at confirmation and upon a modification.

Page 10

that *Nolan* controlled and rejected the trustee's request (no doubt supported by the chapter 13 debtor). As a result, the debtor's obligation for the remaining portion of the lender's secured claim, as provided for in the chapter 13 plan, after the claim had been reduced by application of the sales proceeds, had to be paid as a secured claim. That the process resulted from the creditor's actions rather than the debtor's was not a good reason to stray from *Nolan*'s holding.

The Court does not construe *Nolan* to mean that there is a categorical bar to surrender under § 1329(a). In a prior opinion, *In re Coffman*, 271 B.R. 492 (Bankr. N.D. Tex. 2002), the Court relied principally on *Nolan* in holding that a surrender of a car was not allowed as a means to *change the nature of a claim from a secured claim to an unsecured claim*:

> As noted by the Sixth Circuit in *In re Nolan*, section 1329(a) does not expressly permit a modification that reclassifies or changes the nature of a claim. *In re Nolan*, 232 F.3d at 532–33. Rather, section 1329(a) only permits the debtor to alter the amount or the timing of specific payments. *See id*. "Section 1329(a)(1) should not be read so broadly as to authorize the reclassification of claims." *Id*. at 533. The Coffmans' modification effectively alters the very nature of ACFCU's secured claim and, if allowed, stretches the language of section 1329(a) beyond its plain meaning.
>
> Even if section 1329(a) were construed to allow consideration of the Coffmans' modification, the proposed modification is unfair. Given the binding nature of the confirmed plan, a debtor naturally benefits if retained collateral appreciates in value because the creditor whose claim is secured by the collateral cannot move to modify the plan to have the collateral "re-valued." Where, as here, the creditor has experienced a cram down in valuation at the time of confirmation, the modification, if allowed, results in a double reduction in the secured debt to the debtor's benefit. It is only fair that the Coffmans bear the burden of depreciation. *See In re Nolan*, 232 F.3d at 533–34. "There is no indication that Congress intended to allow debtors to reap a windfall by employing a subterfuge that unfairly shifts away depreciation, deficiency, and risk voluntarily assumed by the debtor through her confirmation of the Chapter 13 plan." *Id*. at 534.

*Coffman*, 271 B.R. at 496. *Nolan* did not hold that a surrender is unavailable under § 1329(a). *Nolan* held that "a debtor cannot modify a plan under section 1329(a) by: 1) surrendering the collateral to a creditor; 2) having the creditor sell the collateral and apply the proceeds toward the

Page 11

claim; *and* 3) having any deficiency classified as an unsecured claim." *Nolan*, 232 F.3d at 535 (emphasis added).

The issue of whether a surrender and reclassification is proper has traditionally arisen in connection with proposed surrenders of cars. Dealing with cars is arguably trickier as a car's value typically depreciates during the term of a chapter 13 plan; real property and homes are much less likely to depreciate. And with a house that serves as the "principal residence," the questions of value and depreciation are less of a concern as the debtor is not allowed to modify the rights of the holder of the home mortgage loan. *See* 11 U.S.C § 1322(b)(2). As a result, regardless the value of the principal residence, the mortgage holder's claim cannot be bifurcated.

The inherent unfairness of the proposed surrenders in *Ramos* and *Coffman*, where, in both cases, the respective properties (the debtors' residence in *Ramos*; the debtors' car in *Coffman*) were previously represented to have a value less than the debt, is not existent here. The surrender here purports to have the effect of paying Nationstar's debt in full.

4.

Section 1329(a)(3) allows a chapter 13 debtor to modify his chapter 13 plan as a means to account for a payment made on the mortgage holder's claim as a result of a foreclosure sale. S*ee, e.g., Ramos*, 540 B.R. at 585–86; *see also* 8 *Collier on Bankruptcy* ¶ 1329.04[3] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2015). In Texas, where non-judicial foreclosures are the norm, such "payment" is typically in the form of a credit bid made by the mortgage holder at the foreclosure sale. A process initiated by the debtor—by formally surrendering the property—should likewise result in foreclosure. There is no conceptual difference between payment by a credit bid and payment by a surrender-for-value. A per se prohibition to surrendering property via modification would presumably prevent initiation of the process by the debtor. And such a

bar would apply to a chapter 13 debtor who, for circumstances that are all too common (job loss, illness, adverse family circumstance, etc.), appreciates she can no longer afford payments on her home and makes the hard but responsible decision to surrender her home. Plus, to reiterate, the rights of the holder of the home mortgage loan cannot be altered. Section 506(a) of the Bankruptcy Code, which provides for bifurcation of an under-secured claim, does not come into play. A debtor's surrender, followed by a foreclosure sale with the concomitant right to seek a deficiency claim, fully recognizes the mortgage holder's rights. *See In re Rogers*, 494 B.R. 664 (Bankr. E.D.N.C. 2013).

5.

It would be unfair to the Dennetts to hold that a surrender is not allowed. The surrendering of collateral has been commonly proposed and approved in both plans and plan modifications as a means to address secured claims. The surrendering of encumbered property under plans or plan modifications is provided for by the Court's standing order for chapter 13 cases, General Order 2014-03,[9] and is thus, at least by inference, sanctioned by the courts in the Northern District of Texas.

III.

The Court concludes that surrender is allowed under § 1329(a) of the Bankruptcy Code. As with most cases where the propriety of a surrender was at issue, the critical question here is whether the *conditional* surrender should be allowed. The Dennetts propose that the surrender satisfy Nationstar's debt in full. The stated value of the home at the time of confirmation was significantly greater than Nationstar's debt, i.e., there was equity in the property. As the principal residence, the value of the home was not at issue at confirmation. Nationstar did not

---

[9] *Amended Standing Order Concerning All Chapter 13 Cases* (June 14, 2014) (available on the Court's website at http://www.txnb.uscourts.gov).

object to the plan, has not sought stay relief, and has not objected to the modification. The Court can only conclude that Nationstar is satisfied with the Dennetts' proposal.

The Court finds one aspect of this case troubling: the Dennetts' joint certification, representing that they were current on all "direct" payments. Perhaps they did not understand the import of the certification or that the reference to direct payments concerned the status of their regular, ongoing mortgage payments. But this is a point on which candor and honesty are imperative. Debtors, with the advice and guidance of counsel, should appreciate the importance of this representation. Direct mortgage payments as part of a cure-and-maintain plan *must* be current as a condition of receiving a discharge in chapter 13. *See In re Kessler*, No. 09-60247, 2015 WL 4726794, at *4 (Bankr. N.D. Tex. Jun. 9, 2015), *aff'd*, No. 6:15-cv-00040-C (N.D. Tex. Nov. 19, 2015), *appeal docketed*, No. 15-11252 (5th Cir. Dec. 18, 2015). A hearing will be set at which the Dennetts shall appear to explain their misrepresentation; after such hearing, the Court will decide if the Dennetts' modification should be approved.

### End of Memorandum Opinion ###